ERWIN DAVIS, Respondent, *v.* FLAGSTAFF SILVER
MINING COMPANY OF UTAH [Limited], FRED'K W.
BILLING, WILLIAM S. McCORNICK, REUBEN H.
ROBERTSON, JOHN R. McBRIDE, ROBERT N. BAS-
KIN, STEPHEN DeWOLFE, WILLAM H. GREEN-
HOW, GEORGE CULLENS, JAMES TUCKER, AUGUS-
TUS KOUNTZE, HERMAN KOUNTZE, CHARLES B.
KOUNTZE, LUTHER KOUNTZE, HELEN TARBET
AND DESERET NATIONAL BANK OF SALT LAKE
CITY, Defendants and Appellants.

1. Action on Contract to Enforce a Lien, and for Injunction and
Receiver.—The plaintiff, E. D., brought suit against the F. S. M. Co.
[limited], a corporation organized under the "Companies Act" of Great
Britain, and others, alleging a purchase of ores to be mined from its mine
in Utah Territory and delivered to him at rates fixed by the contract,
which was evidenced by sale rates of the kind called in England "bought
and sold" rates, and a breach thereof, by failure to deliver; also that he
had advanced to the company $57,800, as payments on said ores—and by
a subsequent contract, which was in writing, between the plaintiff and
defendant company, he had acquired a lien on defendant's mines and
property. The other parties defendant were made such because they were
alleged to have some claim by judgment lien, or otherwise, upon the com-
pany's property, which liens were alleged to be subsequent in time and
subordinate to plaintiff's alleged lien, for ores not delivered. The plaintiff
had a decree in the District Court for $290,000 and interest, and an injunc-
tion was granted against defendant company and its lessor, F. W. B., and
he was appointed trustee or receiver, to take possession of and work the
company's mines, until the said debt to E. D. was paid off from profits, and
also fixing the priorities of other creditors' liens and providing for their
payment accordingly. *Held,* First, That the evidence showed that the
plaintiff, E. D., had loaned to the directors of the company the sums
named in the ore contracts, to pay unearned dividends, and such loans
being forbidden, all the parties to the contract, knowing the purpose
for which such dividends were made and used, they were fraudulent and void.
*Held, further,* Second, That the contract upon which the plaintiff claimed to
found a lien, was based on the ore contracts, and that the stockholders
having never ratified the ore contracts, or the contract providing for their

payment, they were fraudulent and void, as against the company and the other defendants. *Held, further*, Third, The directors of the corporation had no power to ratify the ore contracts. (See Flagstaff S. M. Co. *v.* J. N. H. Patrick et al., January Term, 1877.)

2. POWER OF CORPORATION.—A corporation has no powers except such as are granted by its charter or by necessary implication.

3. LIMIT OF POWER IN CASE AT BAR.—The defendant company was limited in its power to negotiate loans by its articles of association, and the directors had no authority to borrow money beyond that granted, and in the manner specified; and it was prohibited from paying dividends, except from profits.

4. NOTICE OF POWERS OF CORPORATIONS.—The plaintiff, E. D., was not an innocent party. Actual knowledge that the company had no power to make the loan is not necessary to be shown. He is bound to take notice of the directors' powers, for it is found that in the case at bar the plaintiff had knowledge of the want of power on the part of the directors, as he was an incorporator, and one of the first board of directors. He was a dealer in the stock of this and like companies, and must have known the extent and scope of the company's power.

5. CONTRACT FOR A LIEN.—The subsequent contract for a lien on the mine construed and held not a lien, but void and no mortgage.

6. IRREVOCABLE POWER OF ATTORNEY.—An effort in such contract to make one "P." the irrevocable agent of the company, held to be beyond the powers of the corporation or directors, and void.

7. EFFECTS OF AN IRREVOCABLE POWER OF ATTORNEY MADE BY CORPORATION.—The attempt of a board of directors to grant an agent of the company an irrevocable power of attorney, is a virtual dissolution of the corporation, and is therefore void. A corporation can only be dissolved in the manner provided by law.

8. APPOINTMENTS OF A RECEIVER FOR CORPORATION.—Courts of equity have no power to appoint a receiver for a corporation in the absence of a statute conferring such power.

9. ANOTHER ACTION PENDING.—Where another action between the same parties is pending, a plea to that effect will cause a dismissal of the second suit.

10. MUTUALITY OF CONTRACT.—Where by the terms of a contract, one party is bound to do a certain thing, and the other can perform his part at his own option, the contract is not mutual or binding on either party.

Appeal from the Third Judicial District Court.

The facts appear in the opinion.

*Sutherland & McBride*, for the Flagstaff Mining Company.

The rule of damages on the ore due is the value of the ore at the time and place of delivery. 3 Parsons on Contracts, 205,

*et seq.; Shepherd* v. *Hampton,* 3 Wheat. 200; Sedgw. on Dam.
[273] 328, and notes; *Cannon* v. *Fulsom,* 2 Iowa, 101; *Jemmison* v. *Gray,* 29 Iowa, 637; *Deere* v. *Lewis,* 51 Ill. 254;
*Day* v. *Dox,* 9 Wend. 129; *Bartlett* v. *Blanchard,* 13 Gray,
420; *Zehner* v. *Dale,* 25 Ind. 433; *White* v. *Tompkins,* 52
Pa. St. 363; *Dook* v. *Snapp,* Ex. 1, Cold. 180; *Dana* v. *Fiedler,* 12 N. Y. 40; *Billing* v. *Vanderbeck,* 23 Bart. 546; *Barnard* v. *Conger,* 6 McLean, 497; *Halsey* v. *Hard,* 6 McLean,
102; *Smithhurst* v. *Woolsten,* 4 W. & S. 106; See *Baker* v.
*Drake,* 53 N. Y. 211–223.

All these ore contracts, on which ore has become due at all,
have been due since August 21, 1873, and the remedy thereon
is barred by the statute of limitation. *Lawrence* v. *Ballon,*
50 Cal. 258.

Of the contract of December 16, 1873. As the basis of this
contract is the ore contracts, they being void for fraud and
illegality, this contract is also void for the same reason.

It was *ultra vires;* it was a contract not within the power
of the directors to make; it was never, in fact, ratified by the
shareholders, and they had no power to make it valid by ratification. *Abbot* v. *Judson,* 20 How. Pr. 199; Affirmed, 21
How. Pr. 193; *Ward* v. *The Sea Ins. Co.,* 7 Paige, 290; *Bagshaw* v. *Easten,* 7 Hare, 114; *Ward* v. *Society of Attorneys,*
1 Coll. 370.

It was void for want of mutuality. The plaintiff reserved
the right to ignore the contract. The plaintiff reserved the
right to sue for damages and for moneys advanced; nor was
any time fixed for him to make any election.

The contract, if binding, creates no security, either on the
mine or on its management. Equitable liens arise from constructive trusts. 2 Story's Eq. § 127.

And the usual course of enforcing them is by a sale of the
property to which they are attached. 2 Story's Eq. § 127;
See *Bennett* v. *Nichols,* 12 Mich. 22; *Grinnell* v. *Suydam,* 3
Sandf. 132; *Gibson* v. *Stone,* 43 Barb. 285; s. c., 20 How. Pr.
468; *Hewlet* v. *Flint,* 7 Cal. 264; *Bibend* v. *L. & L. Ins. Co.,*

20 Cal. 78; *Pierce* v *Robinson*, 13 Cal. 116; 2 Story's Eq. 1231, 1231 *a*.

The parties contemplated no trust, and the agreement as made, even if valid, created none. Under Patrick's management Davis had no direct claim on him either for ores or money. There was no trust relation whatever between Patrick and Davis.

If the contract provides for a trust, it is to deliver ores, not to pay back the purchase money paid for the ores, nor an equivalent for the ores in damages. An execution of such supposed trust is simply specific execution of the contract, but the decree is not such.

It is not such a contract as a court of equity ever decrees specific performance of.

*First.* It is not certain in its terms. Davis did not agree absolutely in the contract to receive ores past due, and he does not offer to receive them in his bill; nor does the court decree delivery of ores. Ores of " fair average quality " are to be delivered by the ore contracts. The decree cannot define the acts to be done under it; but the court must, or may be, called on to decide as to every pound of ore, whether it is such as the contract requires, therefore—

*Second.* It requires continuous acts which a court of equity does not undertake to enforce performance of. *Collins* v. *Plumb*, 16 Ves. 454; *South Wales R. Co.* v. *Wythes*, 5 De G. M. & G. 880; *Colson* v. *Thompson*, 2 Wheat. 336; *Moses* v. *Virgin*, 3 Ves. 184; *Morgan* v *Milman*, 3 DeG. M. &. G. 24; *Lucas* v. *Comerford*, 1 Ves. 235; *Taylor* v. *Partington*, 7 DeG. M. &. G. 328; *Powell & Co.* v. *Taff Vale & Co.*, L. R. 9 Ch. 331; *Hood* v. *N. E. Ry. Co.*, L. R. 8 Eq. 665; *Coe* v. *Cal. Piqua, etc., R. R. Co.*, 10 Ohio St. 372; *Blanchard* v. *Detroit, etc., R. R. Co.*, 31 Mich. 43.

This uncertainty of fair average quality was supposed to be obviated by a supplemental agreement. It only changes the time in respect to which the quality was. to be ascertained. But this agreement, so modified, calls for a superior quality,

and was void, for being founded on no new consideration. Addison on Contracts, 10, 11, note 1.

This supplemental arrangement introduces a new objection to specific performance—arbitration to decide what ores conform to the contract. *South Wales R. Co.* v. *Wythes, supra; Stout* v. *Rigby*, 6 Ves. 818; *Smith* v. *B. C. & M. R. R.*, 36 N. H. 458, 487; *Marsh* v. *E. R. R. Co.*, 40 N. H. 548, 571; *Milnes* v. *Gerry*, 14 Ves. 400; *Blandell* v. *Battargh*, 17 Ves. 400; *Vickers* v. *Vickers*, L. R. 4 Eq. 529; *Scott* v. *Liverpool*, 3 DeG. G. & J. 334.

If that contract is binding between the immediate parties it can have no effect against third parties acquiring liens for debts, without notice of it. It was not entitled to be recorded, and defendants Billing, McCormick and McBride set up claims as *bona fide* purchasers.

The decree made is not an enforcement of the contract of December 16, 1873. It does not appoint a successor to Patrick, nor devolve on the person appointed the execution of that contract, or any trust created by it. The court renders an excessive judgment on the ore contracts, without a jury, and without a jury having been waived; and then appoints a receiver of the defendant corporation, without calling him by that name or requiring any security of him, to enforce that judgment by the exercise of extraordinary powers, instead of leaving the plaintiff to the legal remedy, or requiring any step towards exhausting the legal remedy, by execution.

A receiver cannot be appointed until legal remedies are exhausted. High on Receivers, § 403, and cases cited; *Cassady* v. *Meecham*, 3 Paige, 311; *McElwain* v. *Willis*, 9 Wend. 548; *Williams* v. *Hoegboem*, 8 Paige, 469; *Thayer* v. *Swift*, Harr. Ch. 430; *Spencer* v. *Cuyler*, 9 Abb. Pr. 380; *Smith* v. *Thompson*, Walk. Ch. 1; *Williams* v. *Hubbard*, ib. 28; *Beach* v. *White*, ib. 495; *Steward* v. *Stevens*, Harr. Ch. 169; *Beck* v. *Burdett*, 1 Paige, 305.

There being no statutory authority therefor, there is no power to appoint a receiver of a corporation. High on Re-

ceivers, § 288, and cases cited; *Bangs* v. *McIntosh*, 23 Barb. 591; *Howe* v. *Deuel*, 43 Barb. 404; *Neal* v. *Hill*, 16 Cal. 145; *Gallagher* v. *French Saving Bank*, MSS. Cal. Case.

The pendency of the former action is a complete defense to this action as to the Flagstaff Company and other defendants claiming under the company. C. L. S., 1265, 1269; 1 Dan. Ch. Pr. 660, 656; Story's Eq. Pl. §§ 743, 744; *Simpson* v. *Brewster*, 8 Paige, 245; *Burnett* v. *Kelbourne*, 3 Cal. 327; *Curd* v. *Lewis*, 1 Dana, 352; *McHenry* v. *Hazard*, 45 N. Y. 487.

Respondents claim that the contract of December 16, 1873, gives Davis an equitable lien. This we deny:

*First*—Because it depends on the ore contracts, which are void. 8 Ohio, 257.

*Second*—It does not bind both parties, and consequently binds neither. 71 E. C. L. 227; 1 E. C. L. 402; 36 E. C. L. 244; 1 Par. on Contracts, 449; Comyn on Contracts, 2; 1 Addison on Contracts, 322.

*Third*—It was beyond the power of the corporation to make such a contract as this, and if it could not make, it could not ratify it. 14 Eng. Rep. 48; 73 E. C. L. 813; 20 Cal. 96; 20 How. Pr. 199; 21 How. Pr. 193; 15 Cal. 145; *Flagstaff* v. *Patrick et al.*, Utah S. C., 1879.

To allow a corporation to surrender its authority over its own property, as this contract provides, would be a license to a corporation to commit a *felo-de-se*.

*Fourth*—The pretended contract was not executed according to law, and in such case the corporation or its creditors may deny its execution. 1 Par. Con. 141; 2 Cranch. 166; 5 East. 240; 8 East. 288; 71 E. C. L. 234; 37 Cal. 16.

*Fifth*—The contract was without any consideration. Inasmuch as it related to past-due debts, either of ores or moneys there was not a shadow of consideration unless Davis had agreed to give time. This he expressly refused. Addison on Con., p. 11 and notes.

The claim that it is a lien independent of these objections

is, that the directors intended to give Davis a security, and that a court of equity will compel the company to carry out the mutual intention of Davis and the directors. The taking of this position is a confession, virtually, that the claim of lien is one binding only the company—it leaves the creditors of the company unaffected by the lien—for honest creditors are not expected to take care of an antecedent creditor who relies on equities resting on matters between the contracting parties.

" An equitable mortgage " that was never signed, or sealed, or recorded, can have no effect on third parties.

*R. N. Baskin*, for Baskin & DeWolfe, defendants.

This being a case in equity, tried by the Chancellor, a new trial is not permissible at all, because a new trial is allowable under the 192d section of the Practice Act only to rehear issues of fact, while in this case, as in all cases in equity, the issues tried by the Chancellor are of both law and fact, and on appeals in cases in equity, both the law and the facts may be retried and a decree rendered on the merits of the whole case, if the statement on appeal is made so as to present both the law and the facts. *Cain et al.* v. *Stringfellow*, Hagan's Reports; Adams' Equity, 300, 301; p. 50 Rev. Stat. of Utah, § 2; Hill. on New Trials, p. 1; Wat., Mo., on New Trials, p. 1.

The issues of law and fact in an equity case cannot be severed, and a new trial in equity, under the 192d section, would do this.

Issues of fact in equity are sometimes referred to a jury, but this is only to enlighten the conscience of the Chancellor, and he may disregard the findings of the jury in rendering the decree, so that this practice does not change the theory of a trial in equity, and the Chancellor in all cases tries both the law and the facts. Adams' Eq, 376, *et seq.;* G. and W. on New Trials, p. 579 *et seq.;* Adams' Eq. pp. 699, 365.

The parties in an equity case are only entitled to one trial on the law of the case, except by appeals, under the Practice Act.

And as the only point of dispute as to the claim of Robertson & McBride was one of law, their only remedy if not satisfied with the action of the court is by appeal from the decree.

. The action of the court in granting a new trial is nugatory, as appears on the face of the record.

*Bennett & Harkness,* for respondents.

Under the circumstances, neither the ore sales or contract of December 16, 1873, are *ultra vires.* When a contract is not on its face necessarily beyond the power of the corporation by which it is made, it will, in the absence of proof to the contrary, be presumed to be valid. Corporations are presumed to contract within their powers. The doctrine of *ultra vires,* when invoked for or against a corporation should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. *Ohio & M. R. R.* v. *McCarty,* 96 U. S. 258; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Union Water Co.* v. *Fluming Co.,* 22 Cal. 621; *Farmers & M. Bank,* v. *R. R. Co.,* 17 Wis. 372; *Steam N. Co.* v. *Weed,* 17 Barb. 378; *McCutcheon* v. *Steamboat Co.,* 13 Pa. 15; *Silver Lake Bank* v *North,* 4 J. C. 379; *Parrish* v. *Wheeler,* 22 N. Y. 494; *Moss* v. *Lead Mining Co.,* 5 Hill. 137; *S. F. Gas Co.* v. *San Fran.,* 9 Cal. 453; *Ottawa R. R. Co.* v. *Murray,* 15 Ill. 338.

If the sales of ores be held a borrowing of money and *ultra vires* the directors, it was not beyond the powers of the body of the corporation, and what the corporation could lawfully do it could ratify when done by its agents.

If a corporation ratify the unauthorized act of its agent, the ratification is equivalent to a previous authority, as in the case of natural persons.

Ratification may be either expressed or implied, but it is much oftener inferred from the proceedings and conduct of the parties, whether private individuals or corporations, than plainly and positively declared. Angell and Ames on Corp. Sec. 304 and notes; *Moss* v. *Rossie L. M. Co.,* 5 Hill. 137; *New Hope & C.* v. *Phoenix Bank,* 3 Com. 156; *Emmett* v.

6

*Reed*, 4 Seld. 312; Green's Brices *ultra vires*, 462, 474; *Payson* v. *Stower*, 2 Dillon, 427; *Chicago B. & C.* v. *Crowell*, 65 Ill. 453; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 545; *Shaver* v. *Bear River Co.*, 10 Cal. 396; *Sherman* v. *Fitch*, 98 Mass. 59; *Blen* v. *Bear River Co.* 20 Cal. 602; *Campbell* v. *Kenosha*, 5 Wall. 194; *Supervisors* v. *Schenck*, ib. 772; *Hoyt* v. *Thompson*, 19 N. Y 207.

The company, by its action against the directors ratified the contract. If a party, having two or more inconsistent remedies, pursues one, he thereby makes his election and is bound. If the company claimed the contract was void, they should have commenced an action to set it aside. The commencement of an action for damages implies the contract either bound the corporation, or that it elected to be bound by it and take damages. It could not sue the directors for making a contract not binding the corporation. With full knowledge of all the facts the corporation settled the cause of action and took damages. *Morris* v. *Rexford*, 18 N. Y 552; *Wilmot* v. *Richardson*, 2 Keyes. 519; *Murray* v. *Lyburn*, 2 J. C. 441; *Kinney* v. *Kiernan*, 2 Lansing, 492; *Seligman* v. *Kalkman*, 8 Cal. 209; Broom's Legal Maxims, side p. 160.

The contract of December 16, 1873, gives the plaintiff an equitable lien.

" The doctrine seems to be well established that an agreement in writing to give a mortgage, or a mortgage defectively executed, or an ineffectual attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien on the property so intended to be mortgaged."

A court of equity treats that which is intended and attempted to be effected as done. Howe's Case, 1 Paige, 125: *Doggett* v. *Rankin*, 31 Cal. 321; *Racoullat* v. *Sansevain*, 32 Cal. 376; *White Water V. Co.* v. *Vallette*, 21 How. 414; *Burn* v. *Burn*, 3 Vesey, Jr., 576; 1 Leading Cases in Eq. 665; Story's Eq. § 64 g. & 790; Tiffany & B. on Trustee, 89.

It cannot be questioned the parties intended to pledge the

possession and proceeds of the mine as security, and this purpose may be carried out whether it is called an equitable mortgage, a trust, or a power given on a consideration and as security.

A transaction is frequently adjudged an equitable assignment through the medium of a trust created. Leading Cases in Eq. 362; *M & F Bank* v. *Jauncy*, 1 Barb. 486.

As a power based on a consideration and in the execution of which the plaintiff had an interest it gave a security both in law and equity. *Hunt* v. *Rousmanier*, 8 Wheat. 174, and notes in 1 Am. L. Cases, 700.

Whether the power is coupled with an interest in the property, so that it would survive the death of the maker (a subject largely discussed in the case cited` it is unnecessary to determine, but there is much reason to hold that it is so coupled. The property to which the power relates is not the title to the mine, but its possession and product. In these the plaintiff had an interest both for security and payment, and the ores to be delivered are the substance of the estate.

The power in this case is part of a contract, and is a security for its performance. It is made irrevocable in terms, and independent of its terms is irrevocable in law, unless the corporation could not give an irrevocable power. In the former case this court held, on what then appeared in the case on motion, that the directors could not lawfully make the contract or give the power. It is not held in that, and we believe in no other case, that a corporation may not give such power as part of a security. It may, unless expressly prohibited by law, sell its property; mortgage it to secure a debt or loan, and which might result in a forced sale; and these powers are greater than the right to pledge the possession and proceeds until the proceeds shall discharge an obligation. This is a mortgage. It is the common law *vivum vadium*, in which the estate survives the pledge, and becomes void when the rents and profits pay the charge. The power in this case only supports the possession of the mortgagee for his security and

hence must be irrevocable to render that security adequate or effectual. It was the more necessary because the possession given was a qualified one, it was qualified by permitting the corporation, instead of the mortgagee, to work the property.

We do not contend that the company might not for cause ask a removal of the agent, and if the removal was refused, apply to a court of equity and get relief. Such a court, by virtue of its jurisdiction in all cases of trusts, could grant the proper relief and compel the proper accounting. It is not the particular grantee of the power that we claim is the security, but the power and pledge of the possession through some agent or trustee we claim is irrevocable.

If the power wholly fails as such, we claim it does not affect the security. Appellants make one assignment of error to the effect that the security rested in the power; the power has been held illegal, therefore the security fails. This is answered by the case cited *supra*, *Hunt* v. *Rousmanier*, where the power failed because of the death of its grantor, but the security intended was held to survive, though the facts showing it was a security depended on proof of facts *extrinsic* to the writing. Here all those facts by which it is made a security appear in the contract.

The cause of action is not barred by the statute of limitations, because the statute did not commence to run until the 23d day of December, 1873, when plaintiff was ousted from the possession.

The statute does not apply in favor of a party not in the Territory. Compiled Laws, p. 368; § 1117; *Olcatt* v. *Tioga Co.*, 20 N. Y. 310; *Blosburg Co* v *Tioga Co.*, 5 Blatchf. 387; *Thompson* v. *Tioga Co.*, 36 Barb. 79; *State* v. *C. P. R. R.*, 10 Nev. 48; *Barstow* v. *Union Con. S. M. Co.*, 10 Nev. 386; *Tioga R. R.* v. *Blosburg*, 20 Wall. 137.

In the interpretation of statutes the contemporaneous construction which it receives, and especially the construction of the courts of the State or country where the law was passed, are always regarded. This statute was passed in New York,

about the year 1840, received a judicial construction in the highest court of the State (20 N. Y. 210) before its adoption on this coast, and hence was adopted with that construction.

" It is a settled rule in the construction of statutes, that, where a statute has received a judicial construction in another State, and is then adopted, it is taken with the construction which has been given it." *Draper* v. *Emerson*, 22 Wis. 147.

The plea of a former suit pending is not supported by the evidence.

The plea, and the evidence under it, to avail, must show a former action pending in the same jurisdiction, for the same identical cause of action, and between the same parties. The former action shown is not between the same parties, nor for the same cause of action, and by the order of the court in the former case the plaintiff was authorized to bring this action. To sustain a plea of this kind an action pending must be shown in which the plaintiffs and defendants are the same. An action in which the parties are inverted will not do. *Thompson* v *Lyon*, 14 Cal. 39; *Walworth* v. *Johnson*, 41 Cal. 61; *Felch* v. *Beardsley*, 40 Cal. 439; *Colt* v. *Partridge*, 2 Met. 571; 37 Cal. 132; 27 Cal. 358; 35 Cal. 316.

The pendency of an action in which the present cause of action might be pending as a defense, is not material. 5 N. Y. 357; 45 N. Y. 580.

There is sufficient proof the company agreed the grade should be equal to the average grade immediately preceding each sale of ore, and before each sale inquiries were made as to grade, and the sale made with reference to it. Davis' Ev., 4 pp. 69, 71; Letters, 5 pp. 1, 3; Board Record, 4 September 12, 1873.

In actions for a specific performance there is a well known distinction between the case of a vendee and vendor, where the contract cannot be literally fulfilled. The vendor must tender a substantial performance to maintain an action. The vendee may, in his election, take a performance, so far as practicable, and compensation in damages for any deficiency. Leading Cases in Eq., vol. 3, 89.

It is assigned as error that there is not sufficient evidence to justify the finding that $17,000 was due to the plaintiff for advances.

Exhibit "O" (which is lost) was a statement of the balance due the plaintiff of $26,274.10. This account was made up from the books of the company here, so far as advances had been sent to Utah. Those items in the statement advanced in England, were furnished by Mr. Davis, and were not on the books of the company here. One item not on the books here was £5,000, recited in the contract of December 16th, and the whole advances in England amounted to about $41,000. Davis' Ev., 4 p. 68; Patrick's Ev., 4 pp. 99, 100, 103; Stipulation.

Error is assigned on the finding that Billing agreed to pay the debts. We need only refer to his contract of July 11, 1877.

It is also urged that the contract of December 16, 1873, is not executed so as to bind real estate. The authorities under III. hold a formal execution is not necessary in equity. There was no statute in Utah until 1874, prescribing how a mortgage should be executed.

A resolution of the board is sufficient authority for a contract. *Bank of Columbia* v. *Patterson*, 2 Cranch, 299, 305; *Flickner* v. *Bank of U. S.*, 8 Wheat. 338, 357.

BOREMAN, Justice, delivered the opinion of the Court:

The appellant, the Flagstaff Company, was incorporated in England, to acquire, hold and operate mining and smelting properties in Utah. The respondent sued the company, alleging the purchase of ores from it, and the non-delivery thereof; also, that he had advanced money to said company, and that a contract was entered into by and between the company and himself, whereby he acquired a lien upon the properties of the said company in Utah, and he asked the enforcement of said contract, and that a receiver be appointed. The other defendants were made parties because they were supposed to hold liens against the property of the said company.

The court below entered a judgment appointing a receiver, and requiring defendants to surrender possession of the property to the receiver, and enjoining them from interfering with the receiver in his holding, working and disposing of the property; said judgment also fixes the priorities of the alleged lien holders, and requires the receiver to pay off the liens, and to pay to respondent two sums, together amounting to $290,000 and interest.

The defendants, the Flagstaff Company and F. W. Billing, appealed from the judgment of the court below, and from the order of the court overruling the motion of said company and said Billing for a new trial.

It appears that the respondents, by arrangements with the directors of the said company, had loaned the company very large sums of money, which was to a great extent, if not entirely, used in paying dividends. Subsequently the character of these loans was sought to be changed, and thus was created what are now offered as "ore contracts." And thereafter the alleged contract of December 13, 1873, was entered into by said company through its directors, and by said respondent in person. This alleged contract of December 13, 1873, called "Exhibit A," was based upon the ore contracts and directed their payment.

It seems clear that there was no affirmative action of the stockholders ratifying or approving either the loans, the ore contracts, or the contract of December 13, 1873. Whatever there was in their conduct supposed to bear such a construction, was of a negative character. But in such matters, a corporation must be judged by its acts, and not by its failures to act. It cannot be said to approve that which it simply failed to disapprove by express words. There was no direct action in the nature of ratification.

It seems equally clear, as was decided by this court in another suit at a former term, in which suit said Flagstaff Company was plaintiff and said respondent (with others) was defendant, that the directors alone had no power to act.

The question reverts back to the powers of the body of the corporation itself. A corporation has no powers but such as are granted either in express terms or by direct and necessary implication. This company had no power granted to it to make loans of money, except under special limitations, as designated in section 20 of the "Articles of Association" of said company. There was no affirmative grant to the company to make such loans as were made, and not only so, but this section 20 has the force and effect of an express limitation upon its powers. The loans were far in excess of the amounts authorized. The use of the money to pay dividends was in violation of the acts of Parliament, called the "Company's Acts." By these acts, this corporation is prohibited from declaring any dividends "except out of the profits arising from the business of the company." Dividends paid out of borrowed money were not paid out of "profits." Thus the company had no grant of authority for using the borrowed money to pay dividends, but it was in fact expressly prohibited from so doing.

It could not be said that respondent was an innocent party, and should not be held responsible for any exercise by the company of powers not granted, or of powers prohibited. Actual knowledge of the want of authority in the company is not necessary to be shown. In dealing with the company, as respondent did—being a party to an executory contract—he must see to it that the company has the powers it claims to have. In the instance before us, we have no doubt that the respondent was fully aware of the corporate powers of the company. He was one of the incorporators of the company and one of its first directors. He owned and bought and sold large amounts of its stocks. He was a stock broker and manipulator of stocks. He went to London with letters that gave him "a good position" (to use his own language), and he says that "In London, the way of operating is very different from here, *decidedly old fogyish. They did not understand bulls and bears on the stock exchange.* A man would go a bear a thou-

sand or two pounds there, and make as much disturbance about that as a man in America would a million." It was right in the line of his business to know the powers of these stock corporations. The large dividends from the borrowed money increased the market value of the stocks, the public supposing that the company was doing a legitimate business, and paying dividends out of "profits." Such people "did not understand bulls and bears on the stock exchange." A shrewd manipulator of stocks could afford to run the risk of losing money loaned to a company to be used to pay dividends, when he knew that he could receive it all back, and much more, too, by the sudden rise in the price of the stocks.

The evidence shows that the directors at that time were acting in entire harmony with the respondent, and willing always to comply with his wishes. The respondent did not propose to lose the money advanced, and hence the claims were put into the shape of "ore contracts." A change of shape did not change the substance, however. Being based upon fraudulent and void loans, they were necessarily also fraudulent and void.

But let us assume that no loans ever were made, and that the ore contracts were original and not based upon prior transactions between the parties. The receipt of forward payments for ores to be delivered in future, as specified in these contracts, was beyond the powers of the corporation. The company has no grant of authority to thus bulk its expected productions and involve the company to its ruin by subsequent inability to comply with the terms of the contract.

Money arising from such forward payments for ores, could not legally be used to pay dividends. Such money was not "profits arising from the business of the company." The money might be termed *anticipated* profits, but we nowhere find any authority for the company declaring dividends out of any profits except such as are realized out of the business— "arising out of the business" of the company. And it is against public policy to allow corporations to thus deal so as

to deceive and defraud the people. An unscrupulous direc-
tory or company might have no ores, and yet sell ore for ten,
twenty or more years ahead of the production thereof, and use
the money thus acquired in declaring one or two dividends of
enormous size. Those knowing the inside workings of the
company could sell off all their stocks at enormous profits,
and leave the company bankrupted and in the hands of those
who were deceived and defrauded into buying the stocks.
Courts cannot look with any favor upon claims for such powers
in corporations.

These ore contracts were the basis of the alleged contract
of December 13, 1873, "Exhibit A," upon which this action
is brought. As the ore contracts were invalid, and not within
the power of the corporation to make, it follows that no action
of the company could give them vitality. Their recognition
in this contract does not, therefore, give them validity. If it
be admitted that the ore contracts were *bona fide* and binding,
what is there in the nature of "Exhibit A" to warrant the
statement that it gives a lien or security to respondent upon
the company's properties in Utah, for the fulfillment of such
ore contracts? It nowhere says that a lien is given, nor that
a security is given. It nowhere says that anything is given to
respondent, except the power to appoint an irrevocable agent
of the company.

The company had refused to give the property into respond-
ent's hands as security or for any other purpose. It also
refused to give him a mortgage. The company, therefore,
never intended to give respondent a mortgage, nor to give him
possession of the property. What did it intend to give? It
simply intended to give him power to have an agent of his
selection control the property of the company at the company's
expense, and without the company having power to remove
the agent or to help itself in any way. Take that power out of
this contract and there is nothing left that did not exist before the
contract was made. The obligation to deliver the ores existed
before this contract was made, and if binding at all, it was

just as binding before this contract was entered into as it was afterwards. No new powers or rights were given respecting the ores, except that of the irrevocable agency. To create an irrevocable agency, and to give the respondent the sole power of the removal of such agent and of appointing his successor, might be a lien, if valid; but the court below very properly said, that so far as the contract purports "to create an irrevocable agency" "it is not binding on the company." A corporation cannot by such agency, put beyond its reach, the power to do that for which it was brought into existence. This company was created to own and work mines and carry on smelting in Utah Territory. To create an agency to do this without the power to revoke the authority, and with such power put into the hands of a stranger, is to virtually dissolve the corporation. For it has no power to do that for which it was created. A corporation cannot yield up its life in any such indirect manner. If it be desirable that its business be wound up, the law points out a way for this to be done.

Liens are of two kinds—liens at law and such as are recognized by courts of equity. A lien at law exists when the party has the right to the possession of the property of another until some existing claim upon it is extinguished. Make the agency revocable at the pleasure of the company, and there is nothing left in the contract to show that respondent had any right to possess the company's property for any purpose.

A lien, as known in courts of equity, is used to denote merely a charge or incumbrance of one person upon the property of another, but not in possession.

The agent was directed to deliver ores to respondent. But the right to the ores existed before this time, if at all. They were paid for, and respondent was entitled to them before this contract was made. The contract only adds a direction to its own agent to deliver them—and this agency itself is admitted to be within the power of the company to revoke, and there is no obligation in the contract to appoint another agent, but

it is in express terms forbidden to do so. The whole contract, therefore, resolves itself back again simply into a recognition of the validity of the ore contracts, whilst such validity existed before this contract was executed.

There was nothing in the nature of trust relation between respondent and the agent. If a trust existed, then respondent had the right to compel the company to make the appointment, and not only so, but such appointment must be satisfactory to the respondent. Yet we have seen that the agency sought to be created here, was revocable at the pleasure of the company, and there was express prohibition upon the company to appoint a successor. If we say that a trust relation existed, therefore, the court must make a new contract for the parties, and not such as they desired or intended.

This contract, "Exhibit A," was not one of mutuality. It was made to bind the company but not the respondent. He could ignore it at pleasure and sue on the ore contracts alone, but no such power of repudiation was granted to the company. Respondent could decline to receive the ores, but the company could not refuse to deliver them. And as we have seen, the company could not remove the agent of its own appointing, but the respondent could do so.

There was no consideration for this contract, so far as the ores were concerned, and all of that part for which there was consideration, was settled and satisfied before this action was brought.

We, for the reasons stated, do not think that respondent has a claim upon the company for the enforcement of this contract, "Exhibit A," sued upon, nor is he entitled to damages for its breach or non-fulfillment.

The main feature of the judgment in this case is that of appointing a receiver. Everything else in it is made subservient to this one matter—is secondary to it.

Our statute provides for the appointment of a receiver "by the court in which the action is pending, or by the judge thereof." There must be an action pending in which a

receiver is asked to be appointed. Compiled Laws, 1870; Practice Act, § 145.

If there be an action pending, the court is authorized to appoint receivers in three general classes of cases. It may appoint the receiver *before* judgment, to preserve the property until judgment. It may appoint one " after judgment to dispose of the property according to the judgment, or to preserve it during the pending of an appeal;" or, it may appoint "in such other cases as are in accordance with the practice of courts of equity jurisdiction." Compiled Laws 1870, p. 438.

In the case at bar, the appointment is neither before judgment nor after judgment, in the sense contemplated by this section of the statute. It is not before judgment in the " action pending," because the judgment of which it is a part is the final judgment in the case. It is not after judgment, (1) for the purpose of preserving the property during appeal, because no appeal had been taken when the appointment was made, but the appeal was afterwards taken from the very judgment itself appointing the receiver; (2) nor was it after judgment, in order " to dispose of the property according to the judgment." No judgment preceded the appointment requiring any property to be disposed of in any particular way. The appointment is not in aid of any prior judgment. Possibly it might be claimed that the judgment of which it is in aid, is part and parcel of the judgment in which the appointment of the receiver is made, and that the vital part of the decree was that granting relief to respondent, which the receiver was to carry out by disposing of the ore and paying the respondent. Perhaps a judgment for general or specific relief might be followed in the same entry by the appointment of a receiver to carry out such judgment by disposing of the property according to the judgment. But that is not this case. No general or special relief is granted to respondent in this decree, which the receiver is directed to carry out. He is directed to pay certain liens prior to those of respondent. But there is no judgment in this case for such liens as

against the company. They are simply recognized to exist prior to that date. He is required to pay respondent certain sums of money, but there is no judgment in favor of respondent and against the company for such sums. The respondent does not to-day have any judgment against the company that the receiver is authorized to carry into execution. We do not think that the authority for the appointment of the receiver can be found under the third general head—that of general equity jurisdiction. Courts of equity ordinarily will not take the management of the affairs of a corporation out of the hands of its own officers and entrust it to the control of a receiver of the court, upon the application of either creditors or shareholders. High on Receivers, § 288.

A court of equity has no power to dissolve a corporation without statutory authority, and then the statute must be followed. To appoint a receiver prevents the corporation from exercising its powers, and virtually winds it up.

The judgment in this case is for the appointment of a receiver and for nothing else, except that which is incidental thereto. He is appointed, and directed to carry into execution a certain contract. As that cannot be done according to the terms of the contract, he is directed to pay money instead of ores. The defendants are enjoined from interfering with the receiver, and required to deliver certain property to him. The judgment, being solely for the appointment of a receiver and for matters incidental thereto, and not being made in compliance with either provision of the statute, was improper.

The plea of another action pending is good. The injunction in this case is utterly at war with the injunction in that case. The appointment of the receiver is likewise to render nugatory the judgment in that case. There is nothing in the judgment or opinion of this court in the former case of the defendant, *Flagstaff Company* v. *Davis et al.*, which would warrant the assumption that the court did, or intended to, allow respondent to institute a new suit and have a re-trial of the issues settled there in that case.

There are various other points presented by this case, but as those questions which we have passed upon are decisive of the case, we shall not consider the others. The judgment and order of the court below are reversed with costs, and the cause is dismissed.

EMERSON, J., concurs.

SCHAEFFER, C. J., dissented, as follows:

In this case I cannot concur with the majority of the court, because I think the testimony in this case shows a ratification by the stockholders of the ore contracts made by the directors with the plaintiff, and that the contract, "Exhibit A," creates an equitable lien upon the mine which the plaintiff is entitled to have enforced by the appointment of a receiver or trustee by the court.

BOREMAN, J., delivered the opinion of the court on the appeal as to defendant McCornick.

The action of the court below in allowing the liens of respondent to take priority of that claimed by appellant, was proper, for the reason that appellant did not have any lien, and for other reasons; but as the whole judgment has been reversed by this court in the case just decided, *Erwin Davis*, respondent, v. *Flagstaff Company*, et al., appellants, and the cause dismissed, this portion of the judgment follows that ruling, and it is therefore reversed and the cause dismissed at cost of appellants.

EMERSON, J., concurs.
SCHAEFFER, C. J., dissents.

BOREMAN, J., delivered the opinion of the court on the appeal, as to defendant McBride.

The judgment of respondent was prior in right to any claim of appellant. The action of the court in granting him a new trial, therefore, was proper. The action of the court below is affirmed, but the cause is dismissed at appellant's costs, in accordance with the decision of this court in the case of *Erwin*

*Davis*, respondent, v. *Flagstaff Company* et al., appellants, this appeal being in the same case.

EMERSON, J., concurs.

SCHAEFFER, C. J., dissents.