## JONES V. BANK OF LEADVILLE.

1. Courts have no jurisdiction to appoint a receiver except in a suit pending in which the receiver is desired.
2. The appointment of a receiver does not dissolve a corporation either in law or in fact.
3. The surrender of the franchise of a corporation is not an official act, but to be effectual must be the act of the stockholders as such.
4. In the absence of equity jurisdiction, properly invoked, the assets of an insolvent corporation do not constitute a trust fund for *pro rata* distribution among all its creditors, nor in such case does any superior equitable lien exist as against a prior attaching creditor.

### Error to District Court, Lake County.

ON the 25th day of July, 1883, the defendant in error was, and had been, a bank doing a general banking business in the city of Leadville, and on that date presented to the Hon. L. M. Goddard, judge of the fifth judicial district of Colorado, its petition in the words and figures following:

" In the matter of the application of the Bank of Leadville to the court to dissolve its corporate existence, close up the business thereof, and for the appointment of a receiver.

" *To the Hon. L. M. Goddard, Judge of the District Court:*

" The petition of the Bank of Leadville respectfully shows to the court: That heretofore on, to wit, the 21st day of August, 1878, the above-named petitioner became and was duly incorporated under the laws of the state, as a banking corporation, and thereupon, upon the filing of its said articles in the proper offices, entered upon the transaction of a general banking business.

" That since said time your petitioner has been largely engaged in said business, and to-day has upon its books, as due to depositors, upward of the sum of $200,000.

" That said petitioner is also indebted to divers and sundry parties in large amounts, upon divers large and sundry amounts in the sum of upwards of $50,000. Schedule of which several indebtednesses will be hereafter filed in court and furnished to any receiver appointed herein.

"That in the transaction of such banking business heavy losses have been sustained by your said petitioner.

"That the nominal assets of the bank are very large, and are upwards of $350,000, but of said assets a large proportion and a very considerable percentage is of no present value, and quite a considerable percentage of no value whatever if collection is to be forced.

"That a large percentage of the assets and all the capital stock of said bank has been lost in the carrying on said banking operations, and that the losses have been so great that the said bank is no longer able to carry on its said banking business, and that the funds of said bank are so far exhausted that the business of the bank, under its incorporation, can no longer be carried on.

"That the said corporation is wholly and entirely insolvent; that your petitioner desires to wind up its affairs, close its business, and secure the ratable and equitable distribution of its assets among its creditors; to retire from business, surrender its franchise, and be dissolved, and to that end seeks the appointment of a receiver.

"Wherefore your petitioner prays that by decree of this court, duly entered, the said corporation, the Bank of Leadville, may be dissolved, that its business and affairs may, under the direction of this court, be duly closed and wound up, and that to that end a receiver of its affairs may by the court be duly appointed, and for such other relief as to the court may seem meet, and your petitioner will ever pray.

"J. B. Bissell,<br>"Attorney for Petitioner."

Was sworn to by George R. Fisher as follows:

"State of Colorado, }
  "Lake County. }

"I, George R. Fisher, being duly sworn, on oath say that I am the cashier and principal stockholder of the petitioner; that I have read said petition and know its

contents, and that the same is true of my own knowledge.                              GEORGE R. FISHER."

On the same day the said judge made the following order:

"In the matter of the application of the Bank of Leadville for a receiver, etc.

"Upon the reading and filing of the verified petition of said corporation, and upon the application of counsel for said corporation, it is ordered that George W. Trimble be, and he is hereby, appointed receiver of all the estate, effects and property, both real and personal, of the said Bank of Leadville, of every shape, form and description, and wheresoever situated, with full power and authority to sue for, collect and receive any and all sum or sums due to the said bank, and to collect and reduce to cash all the estate and assets of said bank, and in so far as the same may be sufficient to pay off, liquidate and discharge the obligations of said corporation.

"That said receiver is appointed upon his executing and filing with the clerk of the court a bond in the penalty of $50,000, with two or more sureties, each qualifying in such sum as to the total shall be double the above amount, such sureties to be approved by the clerk according to the statutes and according to the practice of this court.

"Done at chambers, at Leadville, July 25, 1883.

"L. M. GODDARD,

"Judge Fifth Judicial District."

On the 3d day of November following, Jones, plaintiff in error, filed his complaint against the said bank, claiming $44,222.98 as due him from said bank; and on the 27th day of the same month caused summons to issue upon his complaint, which was served on the same day upon George R. Fisher as cashier, secretary and stockholder of said bank. On the same 27th day of November Jones made and filed his affidavit in attachment, and on the same day filed his attachment bond in the penal sum

of $90,000, executed by himself and ten sureties, which is in the following form:

"Whereas, the above-named plaintiff has commenced, or is about to commence, an action in the district court of the fifth judicial district of the state of Colorado, in and for said county of Lake, against the above-named defendant, upon a contract for the direct payment of money, claiming that there is due to the said plaintiff from said defendant the sum of $44,222.98, lawful money of the United States, besides interest, and said plaintiff is about to apply for an attachment against the property of said defendant, as security for the satisfaction of any judgment that may be recovered therein: .

"Now, therefore, we, the undersigned, residents of the state of Colorado, in consideration of the premises and of the issuing of said attachment, do jointly and severally undertake in the sum of $90,000, and promise to the effect that if the said defendant recovers judgment in said action, or if the said court shall finally decide that the said plaintiff was not entitled to an attachment, the said plaintiff will pay all costs that may be awarded to the said defendant, the Bank of Leadville, and all damages which it may sustain by reason of the wrongful suing out of the said attachment, not exceeding the sum of $90,000.

"Dated this 26th day of November, 1883.

| | |
|---|---|
| "C. A. JONES. | [SEAL.] |
| "F. N. PIERCE. | [SEAL.] |
| "C. F. DAILY. | [SEAL.] |
| "N. P. SEELEY. | [SEAL.] |
| "I. W. CHATFIELD. | [SEAL.] |
| "L. R. TUCKER. | [SEAL.] |
| "NELSON HALLACK. | [SEAL.] |
| "CONRAD HANSON. | [SEAL.] |
| "CHAS. B. WING. | [SEAL.] |
| "ROBERT B. ESTEY. | [SEAL.] |
| "GEO. H. TAYLOR." | [SEAL.] |

There seems to have been no justification by. the sureties, or any of them, nor any indorsement on said bond expressive of the clerk's approval thereof.

The writ of attachment was issued on November 27th, and was served the next day by delivering copies thereof to George R. Fisher as cashier, to George W. Trimble as receiver, and S. J. Warfield as a stockholder. Under the writ of attachment, divers persons were garnished as debtors of the said bank, and certain property was levied upon as the property of the defendant.

On the 28th day of November, George W. Trimble, as assignee and receiver of said bank, filed his motion to dissolve the attachment and discharge the garnishees thereunder, and release the property levied upon, for the following reasons:

"Now comes George W. Trimble, assignee and receiver of the said defendant, and named and proceeded against by the plaintiff as garnishee of said plaintiff, and as having in his possession property and assets belonging, by Thomas & Lyles and J. B. Bissell, his attorneys, appearing specially for the purposes of this motion, and moves that he be discharged as garnishee and as attachment debtor, and in all other respects and positions, and that all property levied on in his possession or standing in his name be relieved and discharged of such levy, and that the return of the sheriff as to such levy be wholly quashed and held for naught; and for reason of said motion the following is alleged:

"*First.* The bond or undertaking, with the sureties thereon, has never been approved by the clerk of this court.

"*Second.* The sureties on said undertaking have never qualified as required by section 414 of the code.

"*Third.* The said Trimble is, and since the 25th day of July, A. D. 1883, has been, the assignee of the Bank of Leadville aforesaid, and in charge of its property and effects, real and personal.

"*Fourth.* The said Trimble has since the 26th day of July, 1883, been the receiver of the said Bank of Leadville, and as such has been in possession, and has been and is entitled to the charge and custody, of the property, effects and assets, real and personal, of the said Bank of Leadville.

"*Fifth.* The said property and effects, being so as aforesaid in the custody of the said Trimble, are not subject to levy by writ of attachment or by execution.

"And in support of the third and fourth reasons assigned as hereinbefore, the affidavit of the said Trimble herewith filed is referred to.

"By J. B. BISSELL,

"THOMAS & LYLES,

"Attorneys for G. W. Trimble, specially appearing."

This motion was supported by the affidavit of said Trimble, which was in words and figures following:

"CHAS. A. JONES, Plaintiff,     ⎱

       *vs.*            ⎰

THE BANK OF LEADVILLE, Defendant. ⎱

"George W. Trimble, first duly sworn on oath, deposes and says that he is the assignee of the Bank of Leadville, by virtue of a deed of assignment made and executed by the said Bank of Leadville on the 25th day of ——, A. D. 1883, said deed of assignment being made by George R. Fisher, the cashier of said bank, pursuant to instructions of the board of directors to the end, at a meeting by them held for that purpose. That said deed of assignment transferred to this affiant, in trust for the benefit of the creditors of said Bank of Leadville, all and singular its property, real and personal, and was duly recorded in the office of the recorder of deeds of said county on the 26th day of July, 1883, in book 103, page 189, of the records of said county.

"This affiant further alleges that on, to wit, the 26th day of July, 1883, he was by the Hon. L. M. Goddard, judge of the district court, appointed receiver of

all the estate, effects and property, both real and personal, of the said Bank of Leadville, of every description, wherever situate, and with full power and authority to collect or receive any and all sums due the said bank, and to collect and reduce to cash all the estate and assets of the said bank, and, in so far as the same might be sufficient to pay off, liquidate and discharge the indebtedness of the said Bank of Leadville. And this affiant further alleges that he did file the bond required by the order of said court, and according to the statutes of the state of Colorado in that behalf provided, and did immediately, and on, to wit, the 26th day of July, 1883, as such assignee and receiver of said Bank of Leadville, take full and complete possession of all and singular the property, real and personal, of the said bank into his custody and possession, and the same has so remained in accordance with the limit expressed in the said deed of assignment and the said appointment of himself as receiver; and for the purpose of both, that on, to wit, the 28th day of November, A. D. 1883, the annexed copy of a writ of attachment and copy of the writ of garnishment were served upon him by the sheriff of Lake county, both entitled in this cause and marked exhibits "A" and "B" respectively, and that the said sheriff, in virtue of the same, has levied upon the real estate in the custody of this affiant, and the title to which is, by virtue of said assignment and receivership, in this affiant, and is ordered by the plaintiff and his attorneys to take possession of all and singular the personalty in the custody of this affiant as such receiver and assignee, and contrary to the terms of said deed of assignment and the said receivership.

"That this affiant's possession of said property, and all and singular thereof, was long prior to the beginning of this suit and to the making of said levy, and that unless the said plaintiff is restrained from making further levies upon said property, this affiant will be harassed and put to trouble and expense and his possession of said prop-

erty seriously interfered with, to the detriment and disadvantage of the creditors of said Bank of Leadville, by means whereof the fund out of which their claims against the bank are to be satisfied in whole or in part will be materially diminished and reduced.

"And affiant further states that the said C. A. Jones is not and has not been a judgment creditor of the said Bank of Leadville, either by virtue of any claim directly due him from said bank or by virtue of any claim which he holds as assignee or otherwise.

(Signed)                "GEO. W. TRIMBLE.

"Subscribed and sworn to before me this 28th day of November, A. D. 1883.

"CHARLES A. HINCKLEY,

"Notary Public Lake County, Colo."

On the 16th of February, 1884, this motion was sustained by the court, the attachment quashed, the garnishees discharged and the property levied upon released. To which ruling Jones excepted, and afterwards, on the same day, judgment was given for plaintiff against the defendant bank for $45,242.50.

Plaintiff sued out a writ of error to review the judgment of the district court in dissolving the attachment.

Messrs. TAYLOR and BICKFORD, for plaintiff in error.

Messrs. J. B. BISSELL and C. S. THOMAS, for defendant in error.

MACON, C.   Of the eleven assignments of error, four challenge the judgment of the district court in dissolving the attachment, and seven the validity of the appointment of the receiver.   Plaintiff in error contends that such appointment was void, and no control over the property of defendant ever vested in the receiver, and that the court in its action on the motion to dissolve the attachment went solely upon the ground that George W. Trimble was a legal receiver and that through him the

property of the defendant bank was *in custodia legis;* while defendant in error as strenuously claims that the writ of attachment was void for want of sufficient and formal bond, and because the sureties thereon did not justify and the clerk did not approve the bond; and also that the appointment of the receiver was legal and valid and he was entitled to the possession of all property of the bank, and the issuance of the attachment was a contempt of court and void. Whether the attachment, because of the irregularities insisted upon by the defendant in error, was or was not voidable upon motion of the defendant, may be passed for the present, to inquire whether Trimble, in his assumed character of receiver, could be heard to object to the validity of the writ and bond. For if he could not, it was error to dissolve the attachment on his motion. If he was not a legal receiver, then he was a mere stranger to the suit and had no standing in court.

This brings us to the examination of the propriety and legality of his appointment as receiver, and requires a construction of the provisions of subdivisions 1 and 3, section 144 and section 145, Code of Civil Procedure. Subdivision 1 provides that a receiver may be appointed "before judgment, provisionally, on application of either party, when he establishes a *prima facie* right to the property, or to an interest in the property *which is the subject of the action, and which is in possession of an adverse party,* and the property or its rents and profits are in danger of being lost or materially injured or impaired."

Subdivision 3, that a receiver may be appointed "in such other cases as are in accordance with the practice of courts of equity jurisdiction." Section 145 provides that "the application for the appointment of a receiver shall be made by filing a petition at any time *in the action in which a receiver is desired,* setting forth the facts upon which the application is based, which petition shall be

verified as complaints are required to be by this act.   And
the party opposing the appointment of a receiver shall do
so by filing an answer to the petition verified as answers
to complaints are required to be by this act."   *   *   *

If these provisions are anything more than a codifica-
tion of the law and practice governing the appointment
of receivers before this enactment, it is difficult to per-
ceive where the difference lies; and to determine to what
facts the court will apply this statute, we are compelled
to look to the practice and law as it was heretofore.

Hitherto it has been the universally accepted opinion
that courts have no jurisdiction to appoint a receiver ex-
cept in a suit pending in which the receiver is desired —
unless in cases of idiots, lunatics and infants, which, as
Lord Hardwicke says in *Ex parte Whitfield,* 2 Atkins,
315, is "a particular jurisdiction." The doctrine is ap-
plied in *Baker v. Backus, Adm'r,* 32 Ill. 95; *Davis v.
Flagstaff Co.* 2 Utah, 92; *Hardy v. McClellan,* 53 Miss.
507; *Hugh v. McRea,* Chase's Dec. 466; *The French Bank
Case,* 53 Cal. 550; *Kimball v. Goodburn,* 32 Mich. 10;
*The People v. Jones,* 33 id. 303; and High on Receivers,
sec. 17, and cases cited in note.   Our statute certainly
contemplates the same thing.   Its plain intent is that
there shall be a controversy between two or more ad-
verse parties moved in the court, involving some conflict-
ing and hostile claims to property that is, at least in part,
the subject-matter of the litigation.   It is evident that in
the mind of the legislature it was necessary to this juris-
diction that there should be some party in all these pro-
ceedings who was adverse to the defendant, and whose
rights to certain property were to be protected and ad-
judicated.   It is impossible by any process of reasoning
to construe the statute so as to make it apply to any
case in which an action (in the ordinary definition of the
term) is not pending.   To hold that courts of equity can
entertain jurisdiction to appoint a receiver of property as
the substantive ground and ultimate object and purpose

of the suit, on the petition of the owner of the property to be controlled and protected, would be to make them the administrators of every estate where the owners thereof were incapable or unwilling to administer them themselves.

When Trimble was named by the court as receiver of defendant in error, no suit was pending against the bank; no one claimed to own or have any interest in the specific property of the bank except the bank itself; no one was before the court claiming the right to have the assets of the bank protected and preserved until he could establish a right thereto, adverse to that claimed by the bank; so far as is disclosed by the record, every one admitted the full and complete ownership of all the property claimed by the defendant in error to be in it. But apparently fearing suits and attachments, defendant asked the court to become the custodian of its effects and property, in fact its assignee for creditors. The court accepted the trust through Trimble as receiver. This it could not do. Such jurisdiction is not found in either the general powers of a court of equity, nor in the statute referred to. If, therefore, there is no other warrant for this action of the court, the appointment of Trimble as receiver was void, and he had no authority in the premises, and no right to be heard to object to the attachment proceedings in this case.

Defendant in error, however, claims that section 258 of the incorporation act is warrant for the appointment of this supposed receiver. This section is as follows: "If any corporation, or its authorized agent, shall do any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record for a payment of money, after demand made by the officer, to be returned no property found, or to remain unsatisfied for ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons

who were stockholders at the time or liable in any way for the debts of the corporation, by joining the corporation in such suit, and each stockholder may be required to pay such debts or liabilities to the extent of the unpaid portion of his stock; and courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation; to appoint a receiver therefor, who shall have authority, by the name of the receiver of such corporation (giving the name), to sue in all courts, and to do all the things necessary to close up its affairs as commanded by the decree of the court."

We are unable to see how this statute can be made to authorize this action. In it is found an extension of the ordinary jurisdiction of courts of equity, which it is well known have no inherent power to dissolve corporations, and never exercise such jurisdiction unless it has been conferred by statute. The first part of the section provides a remedy for creditors and specifies the contingencies upon which the remedies may be enforced, and then proceeds to give the jurisdiction alluded to. But this enlarged jurisdiction to dissolve corporations is to be exercised only for *"good cause,"* and upon such dissolution a receiver may be appointed, if there is any good cause for one.

But what is good cause for dissolving a corporation? The statute is silent on this subject, and we must go to some other source of information for an answer to this inquiry. We do not find in our statute on corporations any specific grounds enumerated for a dissolution of a corporation. But it is unnecessary to go into that question here, for the district court did not dissolve, nor attempt to dissolve, the defendant corporation. The decree leaves the existence of the corporation untouched and intact, and makes the appointment of the supposed receiver the end and sole purpose of its decree. The position attempted to be maintained by defendant in error, that the appointment of a receiver is *ipso facto* and *de*

*jure* a dissolution of the corporation, is utterly unsound. The appointment of a receiver does not dissolve a corporation either in law or fact. *Taylor v. Columbian Ins. Co.* 14 Allen, 353. Nor does the mere insolvency of a corporation, or placing it in insolvency under the statutes for that purpose, dissolve it. A. & A. Corp. sec. 770; *Cohen v. B. P. N. M. Co.* 10 Gray, 243.

If even it should be granted that the appointment of a receiver was a virtual dissolution of the corporation, we are brought back to the original proposition that such appointment must be made in a suit pending, and unless so made is without jurisdiction and void.

The case is not affected by the fact that defendant in error applied to the court for a decree for its own dissolution. It is seen that the court did not so decree, nor can the petition of defendant be treated as a surrender of its franchises and extinguishment of its corporate existence; because, from the facts as shown in the case, no one attempted to make the surrender except Geo. R. Fisher in his official capacity in the company as cashier.

The surrender of the franchises of a corporation is not an official act, but to be effectual must be the act of the stockholders as such. A. & A. Corp. sec. 772; *Smith v. Smith*, 3 Desaus. 575. In this case it is said:

"Among the methods by which corporations may be dissolved, that of a surrender is enumerated in the law books, and doubtless when the whole body of the corporation choose to surrender its rights, it is at liberty to do so, and it will be valid; but a majority must concur who have an interest or right; and officers of a corporation, or an integral portion of it, as we have before stated, are not the corporation; they have no right to make the surrender; and if they make the attempt by an act or declarations, it is an inefficient act; it is not obligatory on the corporation, which retains its full rights, existence and legal character."

The same doctrine is affirmed in *N. O. & Jack. R'y Co.*

*v. Harris*, 27 Miss. 517, and *Keen v. Johnson et al.* 9 N. J. Eq. 401.

It nowhere appears in the record that any other member of the corporation than Fisher proposed a dissolution of this corporation. If, however, every member of the defendant company had joined in the petition to the district judge in this case, he could not have granted the prayer thereof, for the obvious reason that neither has the chancellor nor a court of equity in this state any jurisdiction to accept the surrender of corporate franchises, and administer on the estate of such decedents. Such a jurisdiction would leave the courts of the country no time to attend to the other business for which they were created.

If there was any defect in the proceeding for the writ of attachment, such defect made the writ voidable only, and the order of the court should have allowed such amendments as would have cured the defects. The bond is, in our opinion, sufficient, and the failure to take the justification of the sureties was at most but a misprision of the clerk, which by rule upon him could have been corrected. We do not think the omission of the clerk to indorse on the bond his approval was fatal. Civil Code, sec. 121.

The judgment should be reversed and the cause remanded, with directions to proceed in the case according to law.

RISING, C., concurs; STALLCUP, C., dissents.

*Reversed.*

For the reasons assigned in the opinion of Commissioner MACON the judgment is reversed and the cause remanded.

PETITION FOR REHEARING.

PER CURIAM. In support of the jurisdiction of the district court to appoint a receiver for the defendant in

error, it is earnestly argued that in the opinion filed the court mistook both the facts and the law.

One of the errors of fact pointed out is the assumption that no one acted for the corporation, in the matter of the application for a receiver, "except George R. Fisher, in his official capacity in the company as cashier," whereas the petition filed was the petition of the corporation, being only verified by its cashier. Another objection is that the opinion assumes a final decree was rendered in the equity proceeding, which did not dissolve or attempt to dissolve the corporation, whereas no final decree was rendered in that proceeding, but an interlocutory or provisional order merely, appointing the receiver, so far as disclosed by the records before this court.

The language of the opinion may be liable to criticism in the instances referred to, but if the district court was without jurisdiction to either appoint a receiver for the bank upon its petition, or to dissolve the corporation and close up its affairs, no ground exists for a rehearing.

Conceding, then, as we think the opinion in fact does, that the petition filed was the petition of the corporation, an essential prerequisite to the jurisdiction of the court or judge to appoint a receiver was that there should be *an action pending*. We think this prerequisite was lacking. The authorities agree that the general jurisdiction of courts of equity does not extend to the dissolution of corporations and the administration of their affairs, but that such powers, where they exist, are statutory. Accepting this as the correct doctrine, the question is, Do our own statutes sustain the jurisdiction assumed in the present instance?

The corporation act (sec. 258, Gen. St.) confers power upon the state courts to dissolve or close up the affairs of corporations; to appoint receivers for them, and to do all things necessary to closing up their affairs. But this section, construed by the ordinary rules of interpretation, indicates plainly that an adversary, and not an *ex parte*,

proceeding is contemplated by the legislature in its enactment.

The only other statutory authority for the appointment of a receiver is found in section 144 of the Code of Civil Procedure, which authorizes the appointment to be made, in the cases specified therein, *" by the court in which the action is pending, or by a judge thereof."*

It is not claimed that there was an adversary proceeding in the present case, but it is claimed that there was *an action pending* when the appointment was made.

"The vital idea of an action," says Mr. Bouvier, "is a proceeding on the part of one person as actor against another, for the infringement of some right of the first, before a court of justice in the manner prescribed by the court or the law." We think this definition is in accord with the general understanding of the meaning of the term, and that, to constitute an action in court, there must be not only a petitioner or complainant, but a respondent or defendant.

There being but one party to the proceeding in this case, it follows that the statutory jurisdiction could not be invoked.

Another objection to the jurisdiction in this case, mentioned by Commissioner MACON in his opinion, is that an insolvent party cannot come into a court of equity, and upon its own motion authorize the court to assume the administration of his estate. An attempt has been made to answer this objection in the petition for rehearing, and briefs filed in support thereof, but in our judgment without success. The authorities cited are not directly in point, while very respectable authority is adverse to the jurisdiction. Says Justice Campbell in *Kimball v. Goodburn*, 32 Mich. 10: "It is also claimed that the assets were in the hands of a receiver who had never been discharged. * * * The evidence of confirmation is wanting. But the order appears to have been made in a proceeding wherein the Bushwick Company itself appears

to be complainant, and we are aware of no case where a corporation in its corporate capacity and name can apply to be put in the custody of a receiver."

A similar application to the one made in the present case, except as to parties, was presented to Chief Justice Chase, when sitting at the circuit in South Carolina, in 1869. The State Bank of South Carolina filed a bill setting up that it was insolvent; that certain judgment creditors, who were made parties to the bill, were about to procure an inequitable preference over its other creditors by means of executions which they were enforcing, and praying an injunction that receivers be appointed, etc. The chief justice dismissed the bill, saying, among other things: "The court is not aware of any case which will warrant its assuming the administration of the estate of a debtor simply on the ground of insolvency. * * * A creditor in a proper case might come into a court of equity for the appointment of a receiver, but a debtor could not; this, therefore, is not such a case as calls for the interposition of the court, and the prayer of the bill cannot be granted." *Hugh v. McRae*, Chase's Dec. 466.

The further point is made in the petition for rehearing, that the motion to dissolve the writ of attachment sued out against the bank by plaintiff in error, and levied upon the property in possession of Trimble, was not based alone upon the receivership of Trimble, but upon his appointment as assignee of the bank as well, which latter right to the custody of the property was ignored in the opinion filed. While the above statement is correct, as shown by the record, it does not appear that the deed of assignment was introduced in evidence on the hearing of the motion to dissolve the attachment and to discharge the bank property. This claim of Trimble to the possession of the property was treated, therefore, as not being properly before the court, since the court was not able to judge of its validity, the deed of assignment not being introduced in evidence. The point decided

in this connection was that the order appointing the receiver was without jurisdiction and void.

Another doctrine urged in the original arguments, and which is strongly contended for upon the application for a rehearing, is that the assets and funds of an insolvent corporation constitute a trust fund for *pro rata* distribution among all its creditors, and that an equitable lien thereon exists in favor of all the creditors superior to any liens which can be acquired by attachment proceedings in favor of individuals.   After careful examination of the numerous authorities cited to the proposition, including as well the provisions of our own statute bearing upon the question, we are unanimously of the opinion that no such superior lien exists until the jurisdiction of a court of equity has been properly invoked and lawfully exerted for the protection of such assets and the administration of the affairs of the insolvent.   The writ of the plaintiff in error in this case having been sued out and levied upon the property of the bank before the equitable jurisdiction of the court lawfully attached thereto, he must be held to have acquired a prior and superior lien, so far as the judicial proceedings had for the appointment of a receiver are concerned.   Whether Trimble was entitled to the possession of the property by virtue of an assignment to him for the benefit of the creditors generally is not decided.

The petition for rehearing is denied.

*Petition denied.*